Gregg A. Hubley, Esq. (Nev. Bar No. 7386)
Christopher A.J. Swift, Esq. (Nev. Bar No. 11291)
**ARIAS SANGUINETTI WANG & TORRIJOS, LLP**
7201 W. Lake Mead Blvd., Suite 570
Las Vegas, Nevada 89128
Telephone: (702) 789-7529
Facsimile: (702) 909 7865
Email: gregg@aswtlawyers.com
Email: christopher@aswtlawyers.com

Mike Arias, Esq. (Cal. Bar No. 115385)*
Alfredo Torrijos, Esq. (Cal. Bar No. 222458)*
**ARIAS SANGUINETTI WANG & TORRIJOS, LLP**
6701 Center Drive West, 14th Floor
Los Angeles, California 90045
Telephone: (310) 844-9696
Email:  mike@aswtlawyers.com
Email:  alfredo@aswtlawyers.com

Alan Brayton, Esq. (Cal Bar No. 73685)*
Gilbert Purcell, Esq. (Cal Bar No. 113603)*
James Nevin, Esq. (Cal. Bar No. 220816)*
Andrew Chew, Esq. (Cal. Bar No. 225679)*
**BRAYTON PURCELL, LLP**
222 Rush Landing Road
Novato, California 94945
Telephone: (800) 598-0314
Email:  abrayton@braytonlaw.com
Email:  gpurcell@braytonlaw.com
Email:  jnevin@braytonlaw.com
Email:  achew@braytonlaw.com

*Attorneys for Plaintiffs and the Proposed Class*
* *pro hac vice* pending

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| EGG AND I, LLC a Nevada limited liability company; EGG WORKS, LLC, a Nevada limited-liability company; EGG WORKS 2, LLC, a Nevada limited-liability company; EGG WORKS 3, LLC, a Nevada limited-liability company; EGG WORKS 4, LLC, a Nevada limited-liability company; EGG WORKS 5, LLC, a Nevada limited-liability company; EGG WORKS 6, LLC, a Nevada limited-liability company; and EW COMMISSARY, LLC, a Nevada limited-liability company, <br><br> Plaintiffs, | Case No. <br><br> **CLASS ACTION COMPLAINT** <br><br> JURY TRIAL DEMANDED |

vs.

U.S. SPECIALTY INSURANCE COMPANY, a
Texas corporation; PROFESSIONAL
INDEMNITY AGENCY, INC. dba TOKIO
MARINE, HCC- SPECIALTY GROUP a New
Jersey corporation,

Defendants.

Plaintiffs Egg & I, LLC; Egg Works, LLC; Egg Works 2, LLC; Egg Works 3, LLC; Egg Works 4, LLC; Egg Works 5, LLC; Egg Works 6, LLC, and EW COMMISSARY, LLC (collectively "Plaintiffs" or "Egg Works"), individually and on behalf of all others similarly situated, make the following allegations based upon information and belief, except as to those allegations specifically pertaining to Plaintiffs and their counsel, which are based on personal knowledge.  Plaintiffs bring this action for breach of contract, breach of the covenant of good faith and fair dealing,  declaratory and injunctive relief against Defendants U.S. Specialty Insurance Company ("U.S. Specialty"), and Professional Indemnity Agency, Inc. dba Tokio Marine, HCC ("Tokio Marine"), demanding a trial by jury.

## I.  NATURE OF THE ACTION

1.      Egg Works is a local family owned and operated group of restaurants known mostly for their family-oriented breakfasts, lunches and dining environment throughout Las Vegas and in Henderson, Nevada employing over 400 Clark County residents.

2.      U.S. Specialty is a "Texas-domiciled property and casualty insurance company operating on an admitted basis throughout the United States. The company was incorporated in 1986 and redomesticated to Texas in 1998."[1] Upon information and belief, U.S. Specialty is a subsidiary of Tokio Marine.

3.      Egg Works purchased a Restaurant Recovery Insurance Policy (the "Policy") from U.S. Specialty and Tokio Marine, providing for a policy period of September 1, 2019, through to September 1, 2020. A copy of the Policy is attached as **Exhibit 1**.

4.      The Policy protects Plaintiffs against a loss of business income due to a suspension

---

[1]      https://www.tmhcc.com/en-us/about-us/business-structure

of each restaurants' operations, identified in the Policy and generally known as business interruption coverage.

5.     The Policy also provides "Extra Expense" coverage, under which Defendants promise to pay expenses incurred to minimize the suspension of business.

6.     On March 20, 2020, Nevada Governor Steve Sisolak issued Declaration of Emergency Directive 003, which among other directives, orders the cessation of "non-essential" business and for the purposes of this Complaint, onsite dining. Specifically, Declaration of Emergency Directive 003 provides, in pertinent part:

> SECTION 3: The Nevada general public may utilize restaurants and food establishments serving prepared meals. Such establishments may continue serving the public, ***but shall cease onsite dining effective March 20, 2020 at 11:59 p.m., for the duration that this Directive shall be in effect***. Food establishments open to the Nevada general public shall only serve customers through a take-out, drive-through, curbside pickup, or delivery capacity… (Emphasis added).

7.     Section 11 of the Declaration of Emergency Directive 003 provides that the Directive lasts until April 16, 2020.

8.     A copy of the March 20, 2020, Declaration of Emergency Directive 003 is attached as **Exhibit 2**.

9.     On March 27, 2020, Governor Sisolak issued a Guidance for Declaration of Emergency Directive 003, clarifying that dine-in restaurants are "non-essential" business, "where the risk of transmission of COVID-19 is high." A copy of the March 27, 2020, Guidance for Declaration of Directive 003 is attached as **Exhibit 3**.

10.    On April 1, 2020, Governor Sisolak issued a Declaration of Emergency Directive 010, Stay at Home Order, extending Declaration of Emergency Directive 003 to April 30, 2020. A copy of the Declaration of Emergency Directive 010 is attached as **Exhibit 4**.

11.    In accordance with the above-referenced Directives, Egg Works was forced to suspend business operations at the restaurants. This suspension, which is ongoing, has caused Plaintiff to suffer significant losses and incur significant expenses.

12.    Under the Policy, Plaintiffs have paid substantial premiums to Defendants, and in turn Defendants promised to pay these losses and expenses and are obligated to pay for them.

Defendants have breached the terms of the Policy and have failed to pay for these losses and expenses.

13.     Defendants have refused to pay these losses and expenses.

14.     Upon information and belief, Defendants have failed to pay for similar losses and expenses for innumerous other insures holding policies that are, in all material respects, identical.

## II.     THE PARTIES

15.     Plaintiff Egg and I, LLC is a Nevada limited liability company doing business at 4533 W. Sahara Ave., Las Vegas, Nevada 89102.

16.     Plaintiff Egg Works, LLC is a Nevada limited liability company doing business at 9355 West Flamingo Road, No. 1, Las Vegas, Nevada 89147.

17.     Plaintiff Egg Works 2, LLC is a Nevada limited liability company doing business at 2490 East Sunset Road, Las Vegas, Nevada 89120.

18.     Plaintiff Egg Works 3, LLC is a Nevada limited liability company doing business at 6960 South Rainbow Blvd., Las Vegas, Nevada 89118.

19.     Plaintiff Egg Works 4, LLC is a Nevada limited liability company doing business at 10839 South Eastern Ave., Henderson, Nevada 89052.

20.     Plaintiff Egg Works 5, LLC is a Nevada limited liability company doing business at 2025 Village Center Circle, Las Vegas, Nevada 89134.

21.     Plaintiff Egg Works 6, LLC is a Nevada limited liability company doing business at 7591 Tule Springs Road, Las Vegas, Nevada 89131.

22.     Plaintiff EW Commissary, LLC is a Nevada limited liability company doing business at 5321 Cameron Street, Las Vegas, Nevada 89118.

23.     Defendant U.S. Specialty Insurance Company ("U.S. Specialty") is a Texas corporation with its principal place of business in Houston, Texas. U.S. Specialty engages in substantial and not isolated activity on a continuous and systematic basis in the State of Nevada by issuing and selling insurance policies in Nevada.

24.     Defendant Professional Indemnity Agency, Inc. dba Tokio Marine, HCC ("Tokio Marine") is a New Jersey corporation with its principal place of business in Houston, Texas.

- 4 -

Tokio Marine engages in substantial and not isolated activity on a continuous and systematic basis in the State of Nevada by issuing and selling insurance policies in Nevada.

### III.    JURISDICTION AND VENUE

25.    This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because there is complete diversity between Defendants and at least one member of each class; there are more than one hundred members of each class; and the amount in controversy exceeds $5,000,000.00 exclusive of interest and cost. This Court also has subject matter jurisdiction pursuant to 28 U.S.C. §§ 2201 and 2202 and is authorized to grant declaratory relief under these statutes.

26.    Venue is proper in this district pursuant to 28 U.S.C. § 1391 (b)(2) because a substantial part, if not all, of the acts and omissions complained of in this action took place in the State of Nevada.

### IV.    FACTUAL ALLEGATIONS

27.    In September 2019, Egg Works obtained the Policy issued by U.S. Specialty, policy number U719-860374. The Policy has a policy period of September 1, 2019, to September 1, 2020. The Policy insured "Egg Works, et al." at the following locations, as per the terms of the Policy's Schedule of Covered Locations[2]:

| Insured Trade Name | Address | City | State | Zip Code |
|---|---|---|---|---|
| Egg & I | 4533 W. Sahara Ave | Las Vegas | Nevada | 89102 |
| Egg Works | 2490 E. Sunset Rd. | Las Vegas | Nevada | 89120 |
| Egg Works | 6960 South Rainbow Blvd | Las Vegas | Nevada | 89118 |
| Egg Works | 9355 W. Flamingo Rd. #1 | Las Vegas | Nevada | 89147 |
| Egg Works | 2025 Village Center Drive | Las Vegas | Nevada | 89134 |
| Egg Works | 10839 S. Eastern Ave. | Henderson | Nevada | 89052 |
| Egg Works | 7591 Tule Springs Rd | Las Vegas | Nevada | 89131 |

---

[2]    Exhibit 1, p. 21 "Schedule of Covered Locations."

| Insured Trade Name | Address | City | State | Zip Code |
|---|---|---|---|---|
| Egg Works | 5321 Cameron St. | Las Vegas | Nevada | 89118 |

28.    The Policy provides that Defendants will reimburse Plaintiffs' for any Loss caused by an "Insured Event." The Policy covers all risks are unless they are specifically excluded.

29.    An Insured Event is defined in Section 1, under the categories "Accidental Contamination," "Malicious Tampering," "Product Extortion" and "Adverse Publicity."[3]

30.    "Accidental Contamination" is defined as "Any accidental or unintentional contamination, impairment or mislabeling of an *Insured Product(s)*, which occurs during or as a result of its production, preparation, manufacture, packaging or distribution – provided that the use or consumption of such *Insured Product(s)* has resulted in or would result in clear, identifiable, internal or external visible physical symptoms of bodily injury, sickness, disease or death or any person(s), within three hundred and sixty five (365) days following such consumption or use."[4]

31.    "Insured Products" is defined in the Declarations Page of the Policy as "All retail restaurant offerings served during the Policy period at any time at ***any of the Insured's Locations*** in the manner prescribed in the Application form signed and dated August 29, 2019 and held on file with the Insurer."[5] [Emphasis added.]

32.    Section 2 of the Policy defines Loss as "reasonable and necessary expenses or costs incurred by the *Insured* directly and solely as the result of a covered *Insured Event* at any insured *Location* and subject to the limits of liability of each *Insured Event*."[6]

33.    Section 2.3 is entitled "Business Interruption" and defines the losses associated with a Business Interruption as the Loss of Gross Revenue and Extra Expense, "provided that the *Insured* continues to incur such losses beyond the *Waiting Period*."

/ / /

---

[3]    Exhibit 1, §§ 1.1-1.4.
[4]    Exhibit 1, §1.1.
[5]    Exhibit 1, p. 3.
[6]    Exhibit 1, § 2.

34.    The Policy states:

*Loss of Gross Revenue* shall be assessed by the Insurer based on the analysis of the restaurant sales of affected *Insured Products*, and other *Insured Products* which lost sales as a direct result of the *Insured Event*, during each month of the twelve months prior to the *Insured Event*, and taking into account:

i)     the reasonable projection of the future profitability of such product (s) had no *Insured Event* occurred; and

ii)    all material changes in market conditions of any nature whatsoever which would have affected the future marketing of and profits generated by the *Insured Products* or other affected *Insured Products*.[7]

35.    "Extra Expense" is defined as "the excess of the total cost of conducting business activities during the period of time necessary to clear or repair the *Location* (owned or operated by the *Insured*) where the incident occurred for the sole purpose of reducing the Loss…" Notably, Extra Expense includes maintaining a salaried workforce to the extent required by statute, union, or other work contract and maintaining a minimum work force at a minimal percentage of salary in order to be able to open the location after any sort of shutdown by a "national or local governmental organization or body."[8]

36.    The Policy also permits the recovery of Rehabilitation Expenses, "the reasonable and necessary expenses incurred directly by the *Insured* as a direct result of an *Insured Event* to re-establish the *Insured's Product(s)* to the reasonably projected level of sales or market share anticipated prior to the *Insured Event*."[9]

37.    The Policy sets forth a number of exclusions, none of which apply to Plaintiffs.

38.    One of those one exclusions relates specifically and solely to Avian Influenza Viruses, with the Policy providing, in relevant part:

This Policy of Insurance does not apply to any Loss arising out of, based upon, attributable to or consisting of, directly or indirectly: [¶]

4.18     Any loss caused directly or indirectly, in whole or in part, by

---

[7]     Exhibit 1, §3.2(c).
[8]     Exhibit 1, §3.6.
[9]     Exhibit 1, § 3.15.

1. Any form of *Avian Influenza Viruses*;

2. Any actual, threatened, predicted or perceived outbreak of *Avian Influenza Viruses*; or

3. Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with *Avian Influenza Viruses*; or

4. Any measures or actions undertaken, directed and/or recommended by any governmental or regulatory authority, or any other entity or natural person, with respect to *Avian Influenza Viruses* regardless of any other cause, event, material or product that contributed concurrently or in any sequence to or was accelerated by or results from the loss, injury, cost, damage, claim, expense, dispute and/or suit.

For the purposes of this exclusion, the term *Avian Influenza Viruses* includes:

a. All avian flu or bird influenza viruses including any other nomenclature, scientific (e.g. AH5N1, AH5N2, AH7N1, A H9N2) or otherwise (e.g. "bird flu") devised or used to describe the viruses regardless of any genetic features or differences, subtype or strain, and whether or not partnered with any neuraminidase surface proteins; and any progression, mutation or recombination thereof, including but not limited to progression, mutation or recombination of any subtype or strain, and/or any changes in the antigenic composition thereof.

b. Any complications, infections, illnesses, or secondary or opportunistic diseases related to, or initiating because of, or occurring in conjunction with, or following *Avian Influenza Viruses*."[10]

39. Thus, while the Policy specifically excludes "[a]ny loss caused directly or indirectly" by *Avian Influenza Viruses*, it is entirely silent as to losses relating to COVID-19, coronaviruses, generally, or any other virus other that the Avian Influenza Viruses specifically delineated in the Policy.

40. As discussed, Governor Sisolak suspended all on-site dining for restaurants in the State of Nevada, including Plaintiffs, on March 20, 2020, in Declaration of Emergency Directive 003.

---

[10]   Exhibit 1, §4.18.

41.     Plaintiffs have suffered the suspension of business operations, sustained losses of business income, and incurred extra expenses.

42.     On April 22, 2020, Egg Works provided notice of these losses to Defendants and requested payment consistent with the terms of the Policy.

43.     To date, Defendants refuse to or have failed to meaningfully respond to Egg Works' request and refuse to pay Egg Works consistent with Defendants' contractual obligations.

44.     Egg Works continue to suffer losses and expenses through the date of the filing of this action.

45.     The losses and expenses suffered by Egg Works are not excluded from coverage under the Policy and Egg Works has complied with all provisions of the Policy. Accordingly, Egg Works is entitled to payment for their losses and expenses.

## V.     <u>CLASS ACTION ALLEGATIONS</u>

46.     Plaintiffs bring this action on behalf of themselves and as a representative of all others who are similarly situated.  Pursuant to Rules 23(a), (b)(2), and/or (b)(3) of the Federal Rules of Civil Procedure, Plaintiffs seek certification of the following class:

a.    All persons and entities with Business Income coverage under a Restaurant Recovery Policy issued by Defendants that suffered suspension of business due to COVID-19, and for which Defendants have denied a claim for the losses or have otherwise failed to acknowledge, accept as a covered loss, or pay for the covered losses (the "Business Income Coverage Class").

b.    All persons and entities with Extra Expense coverage under a Restaurant Recovery Policy issued by Defendants that sought to avoid or minimize the suspension of business caused by COVID-19, and/or the actions of civil authorities in response to COVID-19, and for which Defendants have denied a claim for the expenses or have otherwise failed to acknowledge, accept as a covered expense, or pay for the covered expenses (the "Extra Expense Coverage Class").

47.     Excluded from each of the above Classes are Defendant, including any entity in which Defendant has a controlling interest, is a parent or subsidiary, or which is controlled by Defendant, as well as the officers, directors, affiliates, legal representatives, predecessors, successors, and assigns of Defendant.  Also excluded are the judges and court personnel in this case and any members of their immediate families.

48.     Plaintiffs reserve the right to amend or modify the Class definitions with greater specificity or division into subclasses after having had an opportunity to conduct discovery.

49.     This action has been brought and may be properly maintained on behalf of the Classes proposed herein under Rule 23 of the Federal Rules of Civil Procedure.

50.     <u>Numerosity.</u> Fed. R. Civ. P. 23(a)(1).   The member of each Class is so numerous that joinder of all members is impractical.   Plaintiffs are informed and believe that there are thousands of members of each of the Classes.   The precise number of Class members can be ascertained from Defendants' records.

51.     <u>Commonality and Predominance.</u> Fed. R. Civ. P. 23(a)(2) and (b)(3).   There are questions of law and fact common to each Class, which predominate over any questions affecting individual members of each respective Class.   These common questions of law and fact include, without limitation:

    a.   Whether Plaintiffs and the Class members suffered a covered loss under the common policies issued to members of the Class;

    b.   Whether Defendants wrongfully denied all claims based on COVID-19;

    c.   Whether Defendants' Business Income coverage applies to a suspension of business caused by COVID-19 and/or related actions of civil authorities taken in response to the presence or threat of COVID-19;

    d.   Whether Defendants' Extra Expense coverage applies to efforts to avoid or minimize a loss caused by COVID-19;

    e.   Whether Defendants have breached their contracts of insurance through a uniform and blanket denial of all claims for business losses related to COVID-19 and/or the related actions of civil authorities taken in response to the presence or threat of COVID-19;

    f.   Whether Plaintiffs and the Class members suffered damages as a result of Defendants' actions; and

    g.   Whether Plaintiffs and the Class members are entitled to an award of reasonable attorneys' fees, interest, and costs.

52.     <u>Typicality.</u> Fed. R. Civ. P. 23 (a)(3).  Plaintiffs' claims are typical of the claims of the Class they seek to represent.  Plaintiffs and all Class members were exposed to uniform practices and sustained injuries arising out of and caused by Defendant's unlawful conduct.

53.     <u>Adequacy.</u> Fed. R. Civ. P. 23(a)(4).  Plaintiffs are committed to the vigorous prosecution of this action and have retained competent counsel experienced in the prosecution of class actions.  Accordingly, Plaintiffs are adequate representatives and will fairly and adequately protect the interests of the Classes.

54.     <u>Superiority.</u> Fed. R. Civ. P. 23(b)(3). A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Since the amount of each individual Class member's claim is small relative to the complexity of the litigation, and due to the financial resources of Defendants, no Class member could afford to seek legal redress individually for the claims alleged herein.  Therefore, absent a class action, Class members will continue to suffer losses and Defendants' misconduct will proceed without remedy.  Even if Class members themselves could afford such individual litigation, the court system could not. Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court.  Individualized litigation would also create the potential for inconsistent or contradictory rulings.  By contrast, a class action presents far fewer management difficulties, allows claims to be heard which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale and comprehensive supervision by a single court.  Finally, Plaintiffs know of no difficulty that will be encountered in the management of this litigation which would preclude its maintenance as a class action.

55.     <u>Injunctive and Declaratory Relief.</u> Fed. R. Civ. P. 23(b)(2).  Defendants' unlawful and unfair conduct is uniform as to all members of each Class.  Defendants have acted or refused to act on grounds that apply generally to each Class, so that final injunctive relief or declaratory relief is appropriate with respect to each Class as a whole.

/ / /

/ / /

## VI.    FIRST CLAIM FOR RELIEF

**Breach of Contract**

**(By Plaintiffs and the Business Income Coverage Class against Defendants)**

56.    Plaintiffs reallege and incorporate by reference the allegations contained in all prior paragraphs of this Complaint, as though fully set forth herein and, to the extent necessary, plead this cause of action in the alternative.

57.    Plaintiffs bring this claim individually and on behalf of the Business Income Coverage Class against Defendant.

58.    Plaintiff's Policy and the policies of other Business Income Coverage Class members, are insurance contracts under which Defendants were paid premiums in exchange for promises to pay Class members' losses for claims covered by the Policy.

59.    In the Policy, Defendants expressly agree to pay for loss of gross revenue incurred as a result of the perils not excluded under the Policy. Specifically, Defendants promised to pay for losses of business income sustained as a result of a business interruption.

60.    A covered loss has resulted in a business interruption. These interruptions have caused Plaintiffs and Class members losses.

61.    The business interruptions and losses triggered the business income coverage under the Policy and other Class members' policies.

62.    Plaintiffs and the other Class members have complied with all applicable provisions of their respective policies, including payment of premiums.

63.    Defendants, without justification, have refused performance under the Policy and other Class members' policies by denying coverage for these losses and expenses. Accordingly, Defendants are in breach of the Policy and other Class members' policies.

64.    Due to Defendants' breach of the Policy and other Class member policies, Plaintiff and other Class members have suffered actual and substantial damages for which Defendants are liable, in an amount to be proved at trial.

/ / /

/ / /

## VII.   SECOND CLAIM FOR RELIEF

### Breach of the Implied Covenant of Good Faith and Fair Dealing

### (By Plaintiffs and the Business Income Coverage Class against Defendants)

65.     Plaintiffs reallege and incorporate by reference the allegations contained in all prior paragraphs of this Complaint, as though fully set forth herein and, to the extent necessary, plead this cause of action in the alternative.

66.     Plaintiffs bring this claim individually and on behalf of the Business Income Coverage Class against Defendant.

67.     Defendants have breached the duty of good faith and fair dealing owed to Plaintiff and the Business Income Coverage Class in the following respects:

    a.   Unreasonably acting or failing to act in a manner that deprives Plaintiffs and the Class the benefits of their policies;

    b.   Unreasonably engaging in a pattern and practice of acting or failing to act in a manner that deprives Plaintiffs and the Class of the benefits of their policies;

    c.   Unreasonably failing to conduct a prompt, fair, balanced and thorough investigation of all of the bases of Plaintiffs and the Class' claims;

    d.   Unreasonably engaging in a pattern and practice of failing to conduct a prompt, fair, balanced and thorough investigation of all of the bases of claims made Plaintiffs and the Class' policies;

    e.   Unreasonably failing to diligently search for and consider evidence that supports coverage of Plaintiffs' and the Class' claims;

    f.   Unreasonably engaging in a pattern and practice of failing of failing to diligently search for and consider evidence that supports coverage of Plaintiffs' and the Class' claims;

    g.   Unreasonably failing to conduct an investigation to determine the efficient proximate cause (predominant cause) of Plaintiffs' and the Class' losses;

///

///

h.  Unreasonably engaging in a pattern and practice of failing to conduct an investigation to determine the efficient proximate cause (predominant cause) on claims made by insureds;

i.  Unreasonably failing to give at least as much consideration to the interests of Plaintiffs and the Class;

j.  Unreasonably engaging in a pattern and practice of failing to give at least as much consideration to the interests of its insureds as it gives to its own interests;

k.  Unreasonably placing its own financial interests above the interests of Plaintiffs and the Class; and

l.  Unreasonably engaging in a pattern and practice of placing its own financial interests above the interests of its insureds.

68.  By acting in the aforementioned way, Defendants breached the implied covenant of good faith and fair dealing.

69.  As a result of this breach, Plaintiffs and the Class have been damaged in an amount to be proven at trial.

## VIII.  THIRD CLAIM FOR RELIEF

### Declaratory Relief

**(By Plaintiffs and the Business Income Coverage Class against Defendants)**

70.  Plaintiffs reallege and incorporate by reference the allegations contained in all prior paragraphs of this Complaint, as though fully set forth herein and, to the extent necessary, plead this cause of action in the alternative.

71.  Plaintiffs bring this claim individually and on behalf of the Business Income Coverage Class against Defendant.

72.  This Court has jurisdiction to declare the rights and other legal relations pursuant to 28 U.S.C. §§ 2201-2202.

73.  Plaintiff's Policy and the policies of other Business Income Coverage Class members, are insurance contracts under which Defendants were paid premiums in exchange for promises to pay Class members' losses for claims covered by the Policy.

74.     In the Policy, Defendants expressly agree to pay for loss of gross revenue incurred as a result of the perils not excluded under the Policy. Specifically, Defendants promised to pay for losses of business income sustained as a result of a business interruption.

75.     A covered loss has resulted in a business interruption. These interruptions have caused Plaintiffs and Class members losses.

76.     The business interruptions and losses triggered the business income coverage under the Policy and other Class members' policies.

77.     Plaintiffs and the other Class members have complied with all applicable provisions of their respective policies, including payment of premiums.

78.     Defendants, without justification, have refused performance under the Policy and other Class members' policies by denying coverage for these losses and expenses. Accordingly, Defendants are in breach of the Policy and other Class members' policies.

79.     Plaintiffs and the Class members seek a judicial determination of whether the policies provide coverage for business interruption losses.

80.     An actual case or controversy exists regarding Class members' rights and Defendants' obligations under the terms of the Class members' policies.

## IX.     FOURTH CLAIM FOR RELIEF

### Breach of Contract

### (By Plaintiffs and the Extra Expense Coverage Class against Defendants)

81.     Plaintiffs reallege and incorporate by reference the allegations contained in all prior paragraphs of this Complaint, as though fully set forth herein and, to the extent necessary, plead this cause of action in the alternative.

82.     Plaintiffs bring this claim individually and on behalf of the Extra Expense Coverage Class against Defendant.

83.     Plaintiff's Policy and the policies of other Extra Expense Coverage Class members, are insurance contracts under which Defendants were paid premiums in exchange for promises to pay Class members' losses for claims covered by the Policy.

84.     In the Policy, Defendants expressly agree to pay for extra expenses incurred as a

result of the perils not excluded under the Policy. Specifically, Defendants promised to pay amounts in excess of the total cost of conducting business activities during the period of time necessary to clear or repair, including salaries in certain circumstances.

85.     A covered loss has resulted in a business interruption. These interruptions have caused Plaintiffs and Class members losses.

86.     The extra expenses triggered the extra expense coverage under the Policy and other Class members' policies.

87.     Plaintiffs and the other Class members have complied with all applicable provisions of their respective policies, including payment of premiums.

88.     Defendants, without justification, have refused performance under the Policy and other Class members' policies by denying coverage for these losses and expenses. Accordingly, Defendants are in breach of the Policy and other Class members' policies.

89.     Due to Defendants' breach of the Policy and other Class member policies, Plaintiff and other Class members have suffered actual and substantial damages for which Defendants are liable, in an amount to be proved at trial.

## X.     FIFTH CLAIM FOR RELIEF

### Breach of the Implied Covenant of Good Faith and Fair Dealing

### (By Plaintiffs and the Extra Expenses Class against Defendants)

90.     Plaintiffs reallege and incorporate by reference the allegations contained in all prior paragraphs of this Complaint, as though fully set forth herein and, to the extent necessary, plead this cause of action in the alternative.

91.     Plaintiffs bring this claim individually and on behalf of the Extra Expenses Class against Defendant.

92.     Defendants have breached the duty of good faith and fair dealing owed to Plaintiff and the Extra Expenses Class in the following respects:

     a.  Unreasonably acting or failing to act in a manner that deprives Plaintiffs and the Class the benefits of their policies;

     b.  Unreasonably engaging in a pattern and practice of acting or failing to act in a

manner that deprives Plaintiffs and the Class of the benefits of their policies;

c.   Unreasonably failing to conduct a prompt, fair, balanced and thorough investigation of all of the bases of Plaintiffs and the Class' claims;

d.   Unreasonably engaging in a pattern and practice of failing to conduct a prompt, fair, balanced and thorough investigation of all of the bases of claims made Plaintiffs and the Class' policies;

e.   Unreasonably failing to diligently search for and consider evidence that supports coverage of Plaintiffs' and the Class' claims;

f.   Unreasonably engaging in a pattern and practice of failing of failing to diligently search for and consider evidence that supports coverage of Plaintiffs' and the Class' claims;

g.   Unreasonably failing to conduct an investigation to determine the efficient proximate cause (predominant cause) of Plaintiffs' and the Class' losses;

h.   Unreasonably engaging in a pattern and practice of failing to conduct an investigation to determine the efficient proximate cause (predominant cause) on claims made by insureds;

i.   Unreasonably failing to give at least as much consideration to the interests of Plaintiffs and the Class;

j.   Unreasonably engaging in a pattern and practice of failing to give at least as much consideration to the interests of its insureds as it gives to its own interests;

k.   Unreasonably placing its own financial interests above the interests of Plaintiffs and the Class; and

l.   Unreasonably engaging in a pattern and practice of placing its own financial interests above the interests of its insureds.

93.   By acting in the aforementioned way, Defendants breached the implied covenant of good faith and fair dealing.

94.   As a result of this breach, Plaintiffs and the Class have been damaged in an amount to be proven at trial.

## XI.    FIFTH CLAIM FOR RELIEF

### Declaratory Relief

### (By Plaintiffs and the Business Income Coverage Class against Defendants)

95.    Plaintiffs reallege and incorporate by reference the allegations contained in all prior paragraphs of this Complaint, as though fully set forth herein and, to the extent necessary, plead this cause of action in the alternative.

96.    Plaintiffs bring this claim individually and on behalf of the Business Income Coverage Class against Defendant.

97.    This Court has jurisdiction to declare the rights and other legal relations pursuant to 28 U.S.C. §§ 2201-2202.

98.    Plaintiff's Policy and the policies of other Business Income Coverage Class members, are insurance contracts under which Defendants were paid premiums in exchange for promises to pay Class members' losses for claims covered by the Policy.

99.    In the Policy, Defendants expressly agree to pay for loss of gross revenue incurred as a result of the perils not excluded under the Policy. Specifically, Defendants promised to pay for losses of business income sustained as a result of a business interruption.

100.    A covered loss has resulted in a business interruption. These interruptions have caused Plaintiffs and Class members losses.

101.    The business interruptions and losses triggered the business income coverage under the Policy and other Class members' policies.

102.    Plaintiffs and the other Class members have complied with all applicable provisions of their respective policies, including payment of premiums.

103.    Defendants, without justification, have refused performance under the Policy and other Class members' policies by denying coverage for these losses and expenses. Accordingly, Defendants are in breach of the Policy and other Class members' policies.

104.    Plaintiffs and the Class members seek a judicial determination of whether the policies provide coverage for business interruption losses.

105.    An actual case or controversy exists regarding Class members' rights and

Defendants' obligations under the terms of the Class members' policies.

## XII.    SIXTH CLAIM FOR RELIEF

### Declaratory Relief

**(By Plaintiffs and the Extra Expense Class against Defendants)**

106.    Plaintiffs reallege and incorporate by reference the allegations contained in all prior paragraphs of this Complaint, as though fully set forth herein and, to the extent necessary, plead this cause of action in the alternative.

107.    Plaintiffs bring this claim individually and on behalf of the Extra Expense Class against Defendant.

108.    This Court has jurisdiction to declare the rights and other legal relations pursuant to 28 U.S.C. §§ 2201-2202.

109.    Plaintiff's Policy and the policies of other Extra Expense Coverage Class members, are insurance contracts under which Defendants were paid premiums in exchange for promises to pay Class members' losses for claims covered by the Policy.

110.    In the Policy, Defendants expressly agree to pay for extra expenses incurred as a result of the perils not excluded under the Policy. Specifically, Defendants promised to pay amounts in excess of the total cost of conducting business activities during the period of time necessary to clear or repair, including salaries in certain circumstances.

111.    The present caused Plaintiffs and the Class to incur extra expenses, causing losses.

112.    The extra expenses triggered the extra expense coverage under the Policy and other Class members' policies.

113.    Plaintiffs and the other Class members have complied with all applicable provisions of their respective policies, including payment of premiums.

114.    Defendants, without justification, have refused performance under the Policy and other Class members' policies by denying coverage for these losses and expenses. Accordingly, Defendants are in breach of the Policy and other Class members' policies.

115.    Plaintiffs and the Class members seek a judicial determination of whether the extra expense coverage provision applies due to the expenses incurred.

116. An actual case or controversy exists regarding Class members' rights and Defendants' obligations under the terms of the Class members' policies.

## XIII. **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, respectfully request that the Court enter judgment against Defendants, as follows:

1. An order certifying appropriate classes and/or subclasses, designating Plaintiffs as the class representatives and their counsel as class counsel;

2. A judicial declaration concerning the provisions concerning the business income coverage and extra expense coverage;

3. An award of restitution, damages, and disgorgement to Plaintiffs and the Class in an amount to be determined at trial;

4. An order requiring Defendants to pay both pre- and post-judgment interest on any amounts awarded, as allowed by law;

5. An award of costs and attorneys' fees, as allowed by law; and

6. Such other or further relief as may be appropriate.

Dated: April 24, 2020.           **ARIAS SANGUINETTI WANG & TORRIJOS, LLP**

*/s/ Gregg A. Hubley*
Gregg A. Hubley, Esq. (Nev. Bar No. 7386)
Christopher A.J. Swift, Esq. (Nev. Bar No. 11291)
7201 W. Lake Mead Blvd., Suite 570
Las Vegas, Nevada 89128
Telephone: (702) 789-7529

Mike Arias, Esq. (Cal. Bar No. 115385)*
Alfredo Torrijos, Esq. (Cal. Bar No. 222458)*
**ARIAS SANGUINETTI WANG & TORRIJOS, LLP**
6701 Center Drive West, 14th Floor
Los Angeles, California 90045
Telephone: (310) 844-9696

**BRAYTON PURCELL, LLP**
Alan Brayton, Esq.*
Gilbert Purcell, Esq.*
James Nevin, Esq.*
Andrew Chew, Esq.*
222 Rush Landing Road
Novato, California 94945
Telephone: (800) 598-0314
*Attorneys for Plaintiffs and the Proposed Class*
*pro hac vices pending*

- 20 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## XIV.   **DEMAND FOR JURY TRIAL**

Plaintiffs, individually and on behalf of all others similarly situated, hereby demand a trial by jury of any and all issues in this action so triable of right.

Dated:  April 24, 2020.          **ARIAS SANGUINETTI WANG & TORRIJOS, LLP**

*/s/ Gregg A. Hubley*
Gregg A. Hubley, Esq. (Nev. Bar No. 7386)
Christopher A.J. Swift, Esq. (Nev. Bar No. 11291)
7201 W. Lake Mead Blvd., Suite 570
Las Vegas, Nevada 89128
Telephone: (702) 789-7529

Mike Arias, Esq. (Cal. Bar No. 115385)*
Alfredo Torrijos, Esq. (Cal. Bar No. 222458)*
**ARIAS SANGUINETTI WANG & TORRIJOS, LLP**
6701 Center Drive West, 14th Floor
Los Angeles, California 90045
Telephone: (310) 844-9696

**BRAYTON PURCELL, LLP**
Alan Brayton, Esq.*
Gilbert Purcell, Esq.*
James Nevin, Esq.*
Andrew Chew, Esq.*
222 Rush Landing Road
Novato, California 94945
Telephone: (800) 598-0314

*Attorneys for Plaintiffs and the Proposed Class*
*pro hac vices pending*