UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| EGG AND I, LLC, a Nevada limited liability company; EGG WORKS, LLC, a Nevada limited liability company; EGG WORKS 2, LLC, a Nevada limited liability company; EGG WORKS 3, LLC, a Nevada limited liability company; EGG WORKS 4, LLC, a Nevada limited liability company; EGG WORKS 5, LLC, a Nevada limited liability company; EGG WORKS 6, LLC, a Nevada limited liability company; and EW COMMISSARY, LLC, a Nevada limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. SPECIALTY INSURANCE COMPANY, a Texas corporation; PROFESSIONAL INDEMNITY AGENCY, INC., d/b/a TOKIO MARINE, HCC-SPECIALTY GROUP, a New Jersey corporation,<br><br>Defendants. | Case No. 2:20-cv-00747-KJD-DJA<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS** |

Before the Court is Defendants' Motion to Dismiss Complaint (ECF #24). Plaintiffs responded in opposition (ECF #33) and Defendants replied (ECF #37).

I.      <u>Factual and Procedural Background</u>

Plaintiffs are a group of locally owned Las Vegas restaurants known mostly for family-oriented dining experiences. (ECF #1, at 2). Plaintiffs employ over 400 people across the Las Vegas valley. <u>Id.</u> This dispute arises from the Nevada governor's response to the COVID-19 pandemic, which prohibited Plaintiffs, and all other restaurants, from offering onsite dining from March 20, 2020 until April 30, 2020. <u>Id.</u> at 3. Plaintiffs suffered financial losses as a result of the governor's mandate and sought to recover from their Restaurant Recovery Insurance. <u>Id.</u> at 3–4. Defendant U.S. Specialty Insurance Company ("U.S. Specialty") is an insurance company based

in Texas. Id. at 2. Plaintiffs purchased the Restaurant Recovery Insurance Policy from U.S. Specialty for a one-year policy term, beginning September 1, 2019 and ending September 1, 2020. Id. After onsite dining was closed, Plaintiffs provided U.S. Specialty with notice of their financial losses and requested payment consistent with the terms of their policy. Id. at 9. Two days later, Plaintiffs filed the instant action, alleging that "to date, Defendants refuse to or have failed to meaningfully respond to [Plaintiffs'] request and refuse to pay [Plaintiffs] consistent with Defendant's contractual obligations." Id. Plaintiffs argue that the government-mandated closure of their dining rooms falls under the coverage provided in the policy and that Defendants have breached their contractual duties owed to Plaintiffs. Id. Specifically, Plaintiffs brought claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and declaratory relief. Id. at 12–19.

The insurance policy separates the covered items into four categories: "Accidental Contamination," "Malicious Tampering," "Product Extortion," and "Adverse Publicity." (ECF #1-3, at 3). The section describing the limits to liability is organized with a subsection for each of those covered items. Id. The table of contents defines the "Insured's Products" as "[a]ll retail restaurant offerings served during the Policy period at any time at any of the Insured's Locations in the manner prescribed in the Application form signed and dated August 29, 2019 and held on file with the Insurer." Id. at 4. A different definition is given in the body of the policy. Under the heading "Insured Events," the policy states that "The Insurer will reimburse the Insured for its Loss in excess of the Deductible . . . caused by or resulting from any of the following Insured Events first discovered during the Policy Period and reported to the Insurer." Id. at 6. It then lists the insured events as accidental contamination, malicious tampering, product extortion, and adverse publicity and provides each one a definition. Id. Defendants argue that this kind of loss is not covered in the policy and filed this motion to dismiss for failure to state a claim. (ECF #24).

II.   Legal Standard

Under Rule 8, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint does not require "detailed factual allegations," but "requires more than labels and conclusions, and a formulaic

1  recitation of the elements of a cause of action will not do." Bell Atlantic Co. v. Twombly, 550
2  U.S. 544, 555 (2007). "To survive a motion to dismiss, a complaint must contain sufficient
3  factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft
4  v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 557). All "[f]actual
5  allegations must be enough to raise a right to relief above the speculative level." Twombly, 550
6  U.S. at 555. While the court "must take all of the factual allegations in the complaint as true, we
7  'are not bound to accept as true a legal conclusion couched as a factual allegation.'" Iqbal, 556
8  U.S. at 678 (quoting Twombly, 550 U.S. at 555). "When the claims in a complaint have not
9  crossed the line from conceivable to plausible, the complaint must be dismissed." Hendon v.
10 Geico Ins. Agency, 377 F.Supp.3d 1194, 1196 (D. Nev. 2019).

11 "Generally, a district court may not consider any material beyond the pleadings in ruling
12 on a Rule 12(b)(6) motion . . . However, material which is properly submitted as part of the
13 complaint may be considered on a motion to dismiss." Hal Roach Studios, Inc. v. Richard Feiner
14 & Co., 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). Documents "'whose contents are alleged in a
15 complaint and whose authenticity no party questions, but which are not physically attached to the
16 pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss' without converting
17 the motion to dismiss into a motion for summary judgment." Patel v. American Nat'l. Property
18 and Cas. Co., 367 F.Supp.3d 1186, 1191 (D. Nev. 2019) (quoting Branch v. Tunnell, 14 F.3d
19 449, 454 (9th Cir. 1994) (overturned on other grounds)).

20     III.    Analysis

21 Defendants argue that the insurance policy does not cover a loss of revenue due to
22 government action during a pandemic, and because the injury was not caused by a covered event,
23 Plaintiffs have failed to state a claim for which relief can be granted. Plaintiffs argue that the
24 policy covers "all restaurant offerings," including food service to onsite customers, so the loss is
25 covered, and Defendants failed to perform under the contract. Because none of the parties
26 questions the authenticity of the contract cited in the briefs, the Court may consider the content
27 of the insurance policy without converting the motion to dismiss into a motion for summary
28 judgment. Patel, 367 F.Supp.3d at 1191. A review of the insurance policy shows that Plaintiffs'

alleged losses are not covered. Because they are not covered, Plaintiffs have failed to state a claim for which relief can be granted and their motion is dismissed.

Plaintiffs claim that the policy definition for "insured products" includes their family-oriented food service to onsite customers and that when the governor suspended in-person dining, Plaintiffs suffered a loss covered by the policy. If such a loss were covered by the policy, then Plaintiffs' complaint would state a claim for which relief could be granted. A review of the policy is necessary and the interpretation and meaning of a contract is a question of law. Yu v. Albany Ins. Co., 281 F.3d 803, 807 n.2 (9th Cir. 2002). "A written contract must be read as a whole and every part interpreted with reference to the whole, with preference given to reasonable interpretations." Wapato Heritage, LLC v. United States, 637 F.3d 1033, 1039 (9th Cir. 2011) (quoting Klamath Water Users Protective Ass'n v. Patterson, 204 F.3d 1206, 1210 (9th Cir. 1999)). The terms of a contract "are to be given their ordinary meaning, and when the terms of contract are clear, the intent of the parties must be ascertained from the contract itself." Id. When read as a whole, the policy does not cover this type of loss. Plaintiffs' argument that the table of contents definition of Insured Products as "all restaurant offerings" includes the physical action of serving food is unpersuasive. The definition continues, stating "all restaurant offerings *served* during the Policy period." (ECF #1-3, at 4) (emphasis added). Applying Plaintiffs' logic does not make sense because not serving food to customers is inconsistent with the terms "restaurant offerings served." That construction would be unreasonable. Section 3.11 of the policy contains a more specific definition of Insured Products than the definition in the table of contents that Plaintiffs rely on. It defines Insured Products as "all *ingestible* products for human consumption, or any of their ingredients or components . . . and that are all *ingestible* products for human consumption served at any restaurant location." Id. at 10–11 (emphasis added). Plaintiff's interpretation is unreasonable as applied to this more specific definition and as a whole, the contract intends the term "Insured Products" to apply to ingestible items. Those products, despite Plaintiffs' argument, do not include the actual service of food to onsite customers.

Additional evidence exists in the terms of the policy that makes it clear that the Insured Products are the food and ingredients. For example, the policy includes access to a 24-hour crisis

line in case of emergency. The number provided would connect Plaintiffs with The Acheson Group, "to respond on food borne illness and contamination issues." (ECF #1-3, at 5). Providing 24-hour emergency access to a group that assists in responding to a food borne illness or contamination is evidence that the contract was intended to provide coverage when the food and ingredients, not the act of serving the food, became dangerous. Section 3.14 describes the costs associated with any recall of the Insured Products and includes "potential effect of contamination," "redistributing any recalled or restored product(s)," and "restoring the Insured Product(s) to merchantable quality or replacing any recalled Insured Product(s) that have been destroyed." Id. at 11–12. These are but a few of the references to the Insured Products that indicate that Plaintiffs' service of food to onsite customers is not covered. Such service is not ingestible, susceptible to contamination or recall, or described as merchantable. The language of the policy shows that the parties agreed to coverage in limited circumstances arising from Insured Events and losses to Insured Products. Government closure during a pandemic was not one of those events and Plaintiffs' ability to serve onsite customers was not an Insured Product. Applying Plaintiff's interpretation would be unreasonable when applied to the contract as a whole and cannot be adopted.

      Plaintiffs argue that the policy's express exclusion of Avian flu from coverage is evidence that the parties intended to cover more than just contaminated food. They argue that if Defendants specifically excluded the Avian flu, which Plaintiffs state cannot spread through food, then Defendants were aware that they were providing coverage for more than issues of food contamination and intended to cover onsite food service. Plaintiffs ask the Court to take judicial notice that the Avian flu does not spread through food. The Court "may take judicial notice of 'matters of public record' without converting a motion to dismiss into a motion for summary judgment." Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001). However, the Court may not take judicial notice of facts "subject to reasonable dispute." FED. R. EVID. 201(b). Defendants have provided evidence that Avian flu can spread through undercooked poultry products, including eggs with runny yolks, a common breakfast item. Because reasonable dispute exists, the Court may not take judicial notice as Plaintiffs request. Additionally, because

there is evidence that Avian flu can spread through food, like eggs, Plaintiffs' argument that the Avian flu exclusion proves that the policy was not solely intended to cover food contamination is unpersuasive. Defendants had an evidence-based reason to exclude Avian flu contamination from the policy which focuses on coverage for food contamination. This is especially true when eggs make up 50% of Plaintiffs' total percentage of product sales. (ECF #37, at 6).

Even if the Court were to accept Plaintiffs' argument that food service to onsite customers is included as an Insured Product, Plaintiffs' complaint still does not state a claim for which relief can be granted. Section 4 of the policy lists exclusions to coverage, and specifically states that "loss arising out of a change in governmental or health authority regulations with respect to the safety of an Insured Product(s) or intended ingredients" is excluded. (ECF #1-3, at 13). When the governor suspended in-person dining, he did so with respect to the safety of onsite food service. As such, serving food, i.e. the alleged Insured Product, would have been regulated due to its safety. Such a government regulation would be excluded from coverage. If Plaintiffs' arguments were accepted as true, the policy still would not cover Plaintiffs' loss.

The parties entered a contract that does not cover loss due to government shut down during a pandemic. It also does not include onsite food service as one of the Insured Products. Because this type of injury is not covered in the policy, Plaintiffs have failed to state a claim for which relief can be granted and all their claims are dismissed.

IV.   Conclusion

Accordingly, IT IS HEREBY ORDERED that Defendants' Motion to Dismiss (#24) is **GRANTED**.

Dated this 25th day of February, 2021.

Kent J. Dawson
United States District Judge